LYMAN ACKERSON

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

° *Filed at Ottawa May 9, 1888.*

1. CRIMINAL LAW—*proof of an alibi—burden of proof—degree of proof* required. On a criminal prosecution, when the People have made out a *prima facie* case, and an *alibi* is relied on, the burden is on the defendant to prove it,—not beyond a reasonable doubt, nor even by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of his guilt of the crime charged.

2. SAME—*instruction as to proof of an alibi.* On the trial of one for rape, the defense of an *alibi* being made, the court instructed the jury, "that when the People make out such a case as would sustain a verdict of guilty, and the defendant offers evidence, the burden is on him to make out that defense, and as to an *alibi*, and all other like defenses that tend merely to cast a reasonable doubt on the case made by the People when the proof is in, then the primary question is, (the whole evidence being considered, both that given for the defendant and that for the People,) is the defendant guilty beyond a reasonable doubt?—the law being, that when the jury have considered all the evidence, as well that touching the question of the *alibi*, as the criminating evidence introduced by the prosecution, then, if they have any reasonable doubt of the guilt of the accused of the offense with which he stands charged, they should acquit, otherwise not:" *Held*, that the instruction was not such as to impress the jury that in the opinion of the court the State had made out a *prima facie* case; nor was the defendant prejudiced by the words, "that tend merely to create a reasonable doubt."

3. SAME—*admission or confession—whether implied from silence.* An admission or confession may be implied from the conduct of the party in remaining silent when charged with crime, or with complicity therein, or when statements are made by third persons, in his presence, affecting him, when the circumstances afford an opportunity to act or speak in reply, and men similarly situated would naturally deny the imputed guilt, or make explanation of the statements.

4. The degree of credit to be given to such tacit admissions is always to be determined by the jury under the circumstances of the particular case. Such evidence should be received with caution, and attention should be directed to the defendant, and to the circumstances surrounding him that would be likely to influence his action, with a view to determine the motive that induced his silence.

5. If it be doubtful whether the statement was perfectly heard or understood by the prisoner, or circumstances existed which might prevent a reply, or render it improper or inexpedient, or his silence may be attributable to fear, or any other motive than acquiescence in the truth of the proposition to which his silent assent is claimed, the evidence will be entitled to little or no weight; but its value is to be determined by the jury in view of the surroundings and attendant circumstances shown.

6. After the arrest of one charged with rape, the prosecutrix called at the police station to see if he was one of the persons who violated her person, and said in the prisoner's presence that he was one of the men. The witness testifying was asked, "What did he say," to which question objection was made, and overruled. He answered, "He did not say anything,— he hung down his head and did not make any answer." The court directed all of the answer to be stricken out except what the prisoner said. The witness was again asked what the prisoner said, and answered, "He held his head down." The court was asked to instruct, that the fact the prisoner made no reply, if such was the fact, need not be taken into consideration as a circumstance against him, in any manner whatever: *Held,* no error to refuse such instruction.

7. SAME—*of statements of co-defendant.* On the trial of two for rape, the admissions and statements of one of them are admissible in evidence against himself, as well that which is exculpatory of himself as that which is criminating; and there is no error in admitting the same, instructing the jury that it should not be considered against the other defendant.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding.

Mr. E. C. MILES, and Messrs. MILLS & INGHAM, for the plaintiff in error:

The People's second instruction was calculated to arouse suspicion in the minds of the jury against an *alibi,* and casts discredit on the defense. It is not a defense that merely tends to cast a reasonable doubt on the case made by the People when the proof is in. Its effect was also to impress the jury that in the opinion of the court they had made out a case that would justify a conviction. *Hoge* v. *People,* 117 Ill. 44.

The court erred in the admission of evidence. Silence while in custody, when charged with crime, does not amount to an admission of that charge. Wharton on Crim. Ev. (8th ed.)

sec. 680; *Commonwealth* v. *Walker*, 13 Allen, 570; *Commonwealth* v. *Kenny*, 12 Metc. 235.

The confessions of prisoners are received in evidence upon the presumption that a person will not make an untrue statement against his own interest. Roscoe on Crim. Ev. 38.

The statement of Gehrig was in the nature of a self-serving declaration, and therefore was not admissible even to show his guilt. The instructions of the court limiting this evidence to Gehrig can not cure the error. *Railroad Co.* v. *Winslow*, 66 Ill. 219; *Jackson* v. *People*, 18 Bradw. 518; *Denser* v. *Parsons*, 8 id. 625; *Fire Ins. Co.* v. *Rubin*, 79 Ill. 402; *Hutchins* v. *Hutchins*, 98 N. Y. 60.

Mr. GEORGE HUNT, Attorney General, for the People:

The *onus* of proving an *alibi* rests upon the defendant. *Garrity* v. *People*, 107 Ill. 162; 1 Wharton on Crim. Law, 708-744.

The silence of a party when charged with crime, together with all the circumstances, may be given in evidence against him. *Kelly* v. *People*, 55 N. Y. 565.

It is the effect of evidence as a whole, and not distinct parts of it isolated from its connection with other evidence, by which the jury are to be governed in determining the question of the guilt or innocence of the prisoner. *Bressler* v. *People*, 117 Ill. 423.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Lyman Ackerson, plaintiff in error, was jointly indicted and tried with John Knorp and Emil T. Gehrig, for the rape of Mary Cottei. Knorp was acquitted. Ackerson and Gehrig were convicted, and the punishment fixed at eight years in the penitentiary, severally. A motion for new trial was sustained as to Gehrig, but overruled as to Ackerson, and sentence entered on the verdict.

The *corpus delicti* was clearly and satisfactorily established, leaving no doubt that the prosecutrix was ravished at the time and place stated by her. The offense was committed near Thirty-second and Dashiel streets, in the city of Chicago, between half-past eight and ten o'clock of the night of Tuesday, August 9, 1887. The prosecutrix was on the street in company with two young men, Neumann and Pick, when they were approached by three men, one of whom arrested Neumann, took him two or three blocks away, and after kicking him, and telling him not to be seen on the corners again, let him go. Another attempted to arrest Pick, who escaped and ran away, and the third, whom the prosecutrix identified as the defendant Gehrig, arrested her and took her to a shanty on the prairie near by, and attempted to ravish her. Upon her resisting, Gehrig, as she says, whistled, and two men came and threw her on the ground, two holding her while the other ravished her. She was ravished by each of them. After being released, she immediately made complaint, and examination of her person and clothing fully corroborated her in respect to the force employed.

The case, in its facts, turns wholly upon the question of the identification of Ackerson as one of the three engaged in the perpetration of the crime. The defendant Ackerson interposed the defense of *alibi*. The two boys, Neumann and Pick, while they fully corroborate the prosecutrix in every substantial particular, up to and including the pretended arrest, are unable to identify or describe either of the three men. The defendant Ackerson, on the evening in question, was employed as a watchman in new buildings then in process of construction at the corner of Thirty-second street and Lowe avenue. He testifies he went on duty about five o'clock P. M., and remained there with Knorp until about eight o'clock, and leaving Knorp in charge, then went to the corner of Emerald avenue and Thirty-first street, where he remained about an hour and a half or two hours. The new buildings front on Thirty-second

street, and diagonally across that street was the shed or shanty to which the prosecutrix was taken. From Thirty-second street to Thirty-third street it was open prairie. It appears that the prosecutrix was on Thirty-second street, between Lowe avenue and Dashiel street, at the time of her pretended arrest. The first street west of Lowe avenue is Dashiel street, the next west of that is Emerald avenue, so that it is apparent, taking Ackerson's statements as true as to his whereabouts, he was at no time more than two or three blocks away from the scene of the crime. He went to the corner of Thirty-first street and Emerald avenue, as he says, to meet a friend, and failed to find him, but gives the names of four persons whom he met there, only one of whom, Agnes Clark, is produced as a witness. She testified she met Ackerson there, about ten minutes after nine o'clock, and was with him about eight minutes. She is not definite as to the time of night or the length of time she was with accused. So, on the other hand, the assault on the prosecutrix may, from the evidence, have occurred at any time between half-past eight and ten o'clock. It was after ten o'clock, but not eleven, when she arrived at her home. The length of time consumed in the perpetration of the offense is not given. She testifies that it was ten or fifteen minutes after the men left her before she was able to rise; that she then started home. She soon received help, and was promptly taken to her home, a few blocks away.

It is manifest that the testimony of the witness Clark falls far short of establishing an *alibi.* Nor can it be seen how it tends to corroborate Ackerson, except as to the immaterial fact that for eight minutes out of the hour and a half in which the crime might have been committed, he was three or four blocks away from the place of its commission. No other evidence, save that of the defendant, is found in the record tending to establish that defense. Ackerson denied participation in the crime, and stated that he left the new buildings about eight o'clock, was at the corner of Thirty-first street

and Emerald avenue with Frank McAllister,—who was not produced as a witness,—for, as he thinks, an hour and a half, and in that vicinity probably a half hour longer, with Agnes and Kitty Clark.  No review of his evidence, which is in substance the foregoing, will be necessary.  It was shown that at the preliminary examination he testified in his own behalf, and there stated that he was gone away from the new build-ings, where he was watchman, about three-quarters of an hour, and then came back, and he and Knorp remained there together all night.  The burden of making good the defense of *alibi* is upon the accused, and to make it availing he must establish such facts and circumstances clearly sustaining that defense, as will be sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against him.  2 Bishop on Crim. Proc. 29-32; *Mullins* v. *People,* 110 Ill. 45.

The identification of Ackerson by the prosecutrix is positive and unhesitating.  She swears that he was the largest man of the three,—the large man "with the heavy mustache," who was the second to ravish her.  It is shown there were lights at the street intersections where she was first assaulted.  She next saw the accused on the following night, about half-past ten o'clock.  She went with an officer to the vicinity of the crime.  A rain came on, and they took shelter in the new buildings before mentioned.  Presently Ackerson and a man by the name of Overne came in.  She was first asked if she knew Overne, and replied she did not, but at once recognized Ackerson as one of the men who had assaulted her.  It is perhaps singular that at the instant her attention was directed to Ackerson there should have been a flash of lightning, giving her a perfect view of him; but she is fully corroborated in that respect by the officer, and contradicted by no one. She again recognized him at the station, and again on the trial.  The jury saw both the defendant and prosecutrix, heard

them testify, had opportunity of observing the prosecutrix under the rigid cross-examination to which she was subjected, and in view of the whole evidence have believed her, and we are unable to say they were not justified in so doing. We are not, therefore, warranted in interposing for that cause.

It is properly said that the case is extremely close in its facts. The crime charged, in itself, is calculated to arouse indignation in the minds of a jury, especially where its commission is attended with circumstances of peculiar cruelty and atrocity, as was here shown, and the law should be given with accuracy, and nothing permitted to reach the jury that would have a tendency to improperly prejudice them against the defendant. It is insisted that the court erred in the following instruction given on behalf of the People:

"2. The court instructs the jury, as a matter of law, that where the People make out such a case as would sustain a verdict of guilty, and the defendant offers evidence, the burden is on him to make out that defense, and as to an *alibi* and all other like defenses that tend merely to cast a reasonable doubt on the case made by the People when the proof is in, then the primary question is,—the whole evidence being considered, both that given for the defendant and for the People,—is the defendant guilty, beyond a reasonable doubt. The law being, that when the jury have considered all the evidence, as well that touching the question of the *alibi* as the criminating evidence introduced by the prosecution, then if they have any reasonable doubt of the guilt of the accused of the offense with which he stands charged, then they should acquit, otherwise not."

The vice of this instruction is said to be, that it casts discredit on the defense of *alibi*, and that "its effect was to impress the jury, that in the opinion of the court the State had made out a case that would sustain a verdict of guilty." The instruction is not properly subject to the criticism made. There is nothing in the instruction from which an inference

as to the opinion of the court could be drawn. In respect of the other objection, it must be said that it is not true, as a general or legal proposition, that the defense of *alibi* "tends merely to cast a reasonable doubt upon the case made by the People." That may, and will, in many cases, be the only effect of the evidence produced to sustain it, but the defense controverts the guilt of the defendant, and if certainly and satisfactorily established, would be conclusive of the defendant's innocence. While, in theory, it does not deny that the crime has been committed, it asserts that the defendant, during the whole of the time in which the crime is shown to have been committed, was so far removed from the place of its commission that he could not have participated in its perpetration. *Miller* v. *People*, 39 Ill. 464.

But it is not seen how the defendant could have been prejudiced by this instruction. The jury are expressly told by it, as well as by the fourth given for the defendant, that if the evidence of an *alibi*, when considered in connection with the criminating evidence, created in their minds a reasonable doubt of the defendant's guilt, they must acquit. It is not questioned that these instructions gave the law accurately, and that the defendant had the benefit of every principle that could be invoked in his behalf. The defendant would have been in no better position before the jury had they been told that the defense might, under proper evidence, be conclusive, and the fact, if it is a fact, that the jury were led to believe that the defense of an *alibi* tended only to raise a reasonable doubt of the defendant's guilt, in view of these instructions, could have created no prejudice against the defendant or against his defense. The law undoubtedly is, where the People have made a *prima facie* case, and the defendant relies on the defense of *alibi*, the burden is upon him to prove it,—not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such degree of certainty, as will, when the whole evidence is considered, create and leave in the minds

·of the jury a reasonable doubt of his guilt of the crime charged. *Hoge* v. *People*, 117 Ill. 44; *Hopps* v. *People*, 31 id. 392, and .authorities *supra*.

It is next urged, that the court erred in refusing the third .instruction asked by the defendant. The witness Flannigan testified, that while the defendant Ackerson was at the police .station under arrest, the prosecutrix came into his presence .and was told to look at him, and be sure as to whether or not he was one of the men that had assaulted her. She said, in the defendant's presence, she was sure he was one of the men, ·or the man. The witness was then asked, "What did he say?" Objection was made to the question, which was overruled, and ·exception taken. He answered, "He did not say anything— he hung his head down, and did not make any answer." The ·court, on its own motion, ordered all stricken out except what Ackerson said. Thereupon the question was repeated, "What ·did he (Ackerson) say when she said she was sure he was the man?" The answer was, "He held his head down." The ·defendant did not object to the answers, or move to strike them out, but, by the instruction referred to, asked the court ·to instruct the jury, that the fact that Ackerson made no reply ·to the statement of the prosecutrix, "if such was the fact, need not be taken as a circumstance against him, in any manner whatever." The refusal to give this instruction is assigned as ·error. The question calling for declarations of the defendant was clearly unobjectionable. It is apparent, however, that the fact that the defendant remained silent was permitted to go to ·the jury, without objection. Waiving the question of the right ·to raise the objection by instruction to the jury, and treating it as a motion to exclude the evidence, the instruction was prop-·erly refused.

We are referred to the cases of *Commonwealth* v. *Kenny*, 12 Metc. 235, and *Commonwealth* v. *Walker*, 13 Allen, 570, as sustaining the instruction, and as authority for the position ·that the presumption of acquiescence does not arise from the

silence of a prisoner who is in custody. The decision of the latter case was based upon the former. The *Kenny case* was peculiar in its facts, proof of the *corpus delicti* depending upon the supposed implied admission. But if these cases are to be regarded as authority upon the question involved, they would seem not to be in harmony with the current and weight of authority in this country or in England. In Wharton on Criminal Law, sec. 696, (7th ed.) it is said: "Where a man at full liberty to speak, and not in the course of a judicial inquiry, is charged with a crime, and remains silent,—that is, makes no denial of the accusation, by word or gesture,—his silence is a circumstance which may be left to the jury." "The assent of the party is presumed, if nothing be said by him inconsistent with that presumption."

An admission or confession may be implied from the conduct of a party in remaining silent, when charged with crime or with complicity therein, or when statements are made by third persons, in his presence, affecting him, when the circumstances afford an opportunity to act or speak in reply, and men similarly situated would naturally deny the imputed guilt, or make explanation of the statements. 1 Greenleaf on Evidence, secs. 197-215; Joy on Confessions, 77; Roscoe on Crim. Ev. 53; *Rex* v. *Bartlett,* 7 Car. & P. 832; *Rex* v. *Smithers,* 5 id. 332; *Jewett* v. *Banning,* 23 Barb. 13; *State* v. *Perkins,* 3 Hawks, 377; *Donnelly* v. *State,* 2 Dutch. 463; *People* v. *McCrea,* 32 Cal. 98; *State* v. *Pratt,* 20 Iowa, 267; *Perry* v. *State,* 10 Ga. 311; *Kelly et al.* v. *People,* 55 N. Y. 565.

The ground upon which the evidence is admissible is, that his silence, when he may and naturally would speak in denial of the statements imputing guilt, if untrue, is regarded as an acquiescence in their truth, and an implied admission of guilt. The degree of credit to be given to these tacit admissions is always to be determined by the jury, under the circumstances of the particular case. The authorities are uniform, that the evidence, when admissible, should be received with great cau-

-tion. Attention should be directed to the defendant, and to the circumstances surrounding him that would be likely to influence his action, with a view to determine, from his standpoint, the motive that induced or prompted his silence. If it be doubtful whether the statement was perfectly heard or understood by the prisoner, or circumstances existed which might prevent a reply, or render it improper or inexpedient, or his silence is attributable to fear, or any motive other than acquiescence in the truth of the proposition to which his silent assent is claimed, the evidence will be entitled to little or no weight, but its value is to be determined by the jury in view of the surroundings and attendant circumstances shown. 2 Phillips on Evidence, (Cowen & Hill's notes,) 194, note, 191, and authorities *supra*. The prisoner, at the time the statement was made by the prosecutrix, knew he was under arrest for the crime of rape upon her, and that the purpose of her visit was to identify him as one of the parties committing it. Any declaration he might then have made would have been competent evidence, and his admission, either express or implied, of the truth of her statement, is equally admissible. Its cogency as evidence, and the weight to be given it, as we have seen, were to be determined by the jury. It is no objection to the admissibility of his admissions or confessions, whether express or implied, that he was under arrest, if no improper influence was used to induce them, and he was free to speak in denial of them. Wharton on Crim. Law, sec. 689, note f; *Kelly* v. *People, supra; Donnelly* v. *State, supra; People* v. *McCrea, supra; State* v. *Pratt, supra; Rex* v. *Bartlett, supra; State* v. *Perkins, supra.*

It is lastly objected, that the court admitted improper evidence. The defendant Gehrig was arrested on Saturday following the commission of the offense. The police officer and others were permitted to testify, over the objection of the defendants, to Gehrig's statements, made on the evening of his arrest, and afterwards at the magistrate's office, on oath.

These were, that he knew nothing of the rape, personally, but that on Tuesday night,—being the night of the rape,—about ten o'clock, or a little after, he was in the saloon,—where he was tending bar,—and Knorp came in at the side door, and called him down to the end of the bar, out of the hearing of others, and told him that he and the watchman had gotten into a bad scrape over in the new buildings; that they had raped a girl, and asked his (Gehrig's) advice what to do; that he replied, "Well, if that's the case, you had better skip." It is not pretended this evidence was admitted as evidence against the defendant Ackerson. On the contrary, on objection to it by his attorney, the court said: "The objection is sustained, as far as your client is concerned." It was, however, admitted, and was so understood, as evidence against Gehrig, and him alone, and the jury were so instructed. But it is said that the evidence was of the most damaging character to the defendant Ackerson, and that as the evidence was improper as against Gehrig, its admission was error, which should reverse the judgment against Ackerson. Numerous cases are cited holding that an instruction to disregard evidence improperly admitted will not cure the error in its admission; but the principle there announced can have no application in this case.

It is urged that the statements of Gehrig, testified to, were exculpatory and self-serving, and not criminatory, and therefore not admissible at the instance of the People. This, if the fact that they were exculpatory would render them inadmissible when offered by the People, is a misapprehension. The *corpus delicti* being proved, it was competent for the People to resort to proof of collateral facts and circumstances, from which guilt or guilty knowledge might be inferred. These are offered and admitted as evidence, not as part of the *res gestæ* of the crime itself, but as indicative of a wicked mind. Where declarations of the accused are proved, the whole declaration must be admitted, as well that which tends to exculpate as

that from which an inference of criminality may be drawn, and the jury, considering it all in the light of the other facts proved, honestly applying their own experience, must say what inference, if any, is to be drawn therefrom. It was in this view the evidence under consideration was admitted, that the jury might say whether the defendant Gehrig had volunteered a false statement of facts, from which there would arise an inference of conscious guilt, and which had induced him to seek protection in falsehood. Roscoe on Crim. Ev. 18 ; Wharton on Crim. Law, 714.

The evidence was proper for the consideration of the jury, in determining the guilt or innocence of the defendant Gehrig, and as to the other defendants it was carefully guarded, both in the ruling of the court and by the instructions. As the defendant Gehrig may be again put upon trial, any discussion of the inferences to be drawn by the jury, from the time and circumstances of the alleged confession of guilt by Knorp, and the exclusion therein of the third person shown to have participated in the crime, and the like, would be manifestly improper. It is apparent, however, that the jury gave no credence whatever to the alleged confession of Knorp, and that no one was injured by its admission, unless it operated to the injury of Gehrig himself, against whom it was proper evidence. Knorp, who was alleged to have made the confession to Gehrig, was acquitted, while Gehrig was convicted.

The jury were fully and accurately instructed upon every principle of law applicable to the facts. There was ample evidence to sustain a verdict of guilty, if the jury believed that given on the part of the People and disbelieved that of the defendant, which they have done, and we are not at liberty to interfere with their finding.

The judgment of the Criminal Court will be affirmed.

*Judgment affirmed.*