(No. 13512.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY SEFF, Plaintiff in Error.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

1. CRIMINAL LAW—*when silence constitutes admission of guilt.* An admission of guilt may be implied when a party charged with crime remains silent when statements, which he hears and understands, are made by third persons in his presence implicating him, where the circumstances are such as to afford him an opportunity to act and speak in reply and are such that a person similarly situated would naturally make a reply.

2. SAME—*when silence does not amount to an admission.* An admission of guilt is not implied from the silence of a party charged with crime where the circumstances are such that the accused is not in a position to deny the charge, or where his silence is of a character which does not justify an inference that he should have spoken, or where he is restrained in any way from speaking by fear, doubt of his rights, instruction by his attorney or a reasonable belief that his security will be best promoted by silence.

3. SAME—*what evidence as to accusation in presence of defendant is admissible.* In a trial for murder, evidence of the conduct of the defendant and of what was said in his presence when he was accused by the victim of the assault is admissible upon the question of an implied admission of guilt, but his conduct should not be regarded as such admission where the identification of the accused is not positive and there is a difference in the testimony regarding the circumstances of the accusation.

4. SAME—*when judgment will not be reversed for faulty instructions.* Though an instruction for the People on the subject of reasonable doubt and one for the defendant on the presumption of innocence are both faulty in submitting to the jury the question what are material facts, the judgment will not be reversed for such error provided the instructions are not contradictory.

5. SAME—*what are material facts in a criminal case.* In a criminal prosecution the material facts are the final essential elements of the crime and the ultimate conclusions of fact from every variety of evidence tending to establish them.

6. SAME—*instructions should not submit to the jury propositions which are for the court—material facts.* Although in a criminal prosecution the jury are judges of the law as well as of the facts, instructions should not submit to them propositions of law which it is the duty of the court to decide, such as the question what are the material facts in the case.

7. SAME—*when improper argument by the State's attorney is not ground for reversal.* In a trial for murder, though the only purpose in admitting evidence of the accusation of the defendant by the victim of the assault was to enable the jury to determine whether there was an implied admission of guilt, an improper statement in the State's attorney's argument in referring to such evidence as the identification of the accused is not ground for reversal, where an objection to the argument was sustained and the jury instructed that the accusation was not to be considered as evidence of identification.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding.

CLARENCE S. DARROW, and PETER SISSMAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and GROVER C. NIEMEYER, of counsel,) for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Harry Seff, plaintiff in error, was indicted in the criminal court of Cook county for the murder of Edward Tomczyk, and upon a trial was found guilty of manslaughter and sentenced to the State penitentiary for an indeterminate term.

Edward Tomczyk was employed as a cutter by Simon M. Baum, a manufacturer of wash dresses under the name of Nora Shirtwaist Company, at 1861 Milwaukee avenue, in Chicago. On February 16, 1917, the factory was invaded by a crowd of people and there was an altercation between them and Baum, Tomczyk and Minnie Pett, the forewoman, during which Tomczyk was stabbed or cut with an instrument making an incised wound about one and

a half inches in length in his neck and he died from the wound. The controversy at the trial was whether the defendant was with the crowd and made the assault on Tomczyk. The defendant had been in the factory with a committee of two girls and two men about three weeks before the homicide according to the testimony for the People, and according to his statement six or seven weeks before that time, and was seen by Baum and Minnie Pett. The account of that visit by Baum was, that the party came in the factory while Baum was at lunch, and he testified when he returned from lunch and found them there he asked what they were doing, and they said, "Looking around;" that he called their attention to the sign on the door reading, "No admittance except to employees," and he told them to get on the outside, and they left. The defendant was business agent for the joint board of the Cloak Makers' Union, and his business was visiting shops and settling prices and disputes. He testified that he was in the neighborhood visiting two shops, one of them of Levi and the other of Bonebach, and met the committee looking for the Nora Shirtwaist Company; that he showed them the place and called their attention to the sign, and they asked him to come along with them, because they said the Nora Shirtwaist Company was making "scab" work for Nat Ribich; that when he went into the factory Baum asked who he was, and he gave his name and said that he represented the Cloak Makers' Union; that the committee asked about the scab work, and Baum replied, and the defendant said to the committee not to bother and go home, and they left the place. This visit had no connection with the occurrence on February 16 and the evidence related only to the ability of Baum and Minnie Pett to recognize and identify the defendant.

Baum, after testifying to the previous visit by the defendant, said that about a quarter before twelve o'clock on February 16 he saw a crowd coming toward his place; that

the defendant was one of the crowd and they opened the outside door and came through the hallway; that he told them they had no business there; that he tried to push them out but they pushed him further into the factory; that there was a hammer lying there and he picked it up and ordered them out, but somebody grabbed the hammer from him; that he tried to get into his office to call the police, but the crowd would not let him and pushed further into the factory; that the crowd was not doing anything except preventing him from getting into the office; that defendant was in the hallway and a lot of the girls were yelling; that Tomczyk was about six feet from him on the other side of the cutting table, and that he heard Tomczyk say, "Baum! I am cut!" and he looked around and saw him bleeding but did not see anyone strike Tomczyk, and that when he tried to get into the office one of the men said, "This is a peaceable strike."

Minnie Pett, the forewoman in the factory, testified that she saw the defendant on the previous visit, and on February 16, about a quarter to twelve o'clock, the defendant and a lot of other people, women and men, about thirty in number, entered the factory; that all the girls got up from their machines and started screaming; that she saw the defendant and a whole lot more of them walk to the front of the factory, and when she got there the crowd had Baum surrounded; that Tomczyk was standing between the aisles, and the defendant tried to get where Tomczyk was and she pulled him back off from the table; that another man pushed her and she grabbed a chair and one of them took the chair away from her, and during that time Tomczyk said, "I am stabbed;" that Tomczyk was about four feet from her and she looked around and saw the blood flowing from his neck; that the defendant was the first man to enter the factory and was in front of Tomczyk; that she did not see anyone else near Tomczyk, and the defendant was right in front of him and others might have been

two feet away; that she looked around and saw defendant with his hand up but did not see anything in his hand, and that his hand came down to its normal position.

The defendant denied that he was at the factory on February 16, and testified that as business agent for the Cloak Makers' Union he had nothing to do with the line of work of the Nora Shirtwaist Company; that on February 16 he was at the office of the union at about nine o'clock in the morning; that his business was to settle prices, and he was then assigned to settle a dispute at the Monarch Cloak Company, at Madison and Market streets, where a strike was on; that he went there and stayed over an hour and left about fifteen or twenty minutes before twelve o'clock and went to lunch; that the boss, Adams, who has since died, and Bennie Jacter, Hyman Friedlander and one Kline went with him to Thompson's lunch room, at Madison and Market streets; that afterward he went to a place called the Potash & Perlmutter corner, at Market and VanBuren streets, and other corners where cloak makers congregated during the noon hour; that he went back to the office and got there after one o'clock and made his report and went home. Hyman Friedlander testified that he worked for Adams, doing business as the Monarch Suit and Cloak Company; that he saw the defendant in that shop about eleven o'clock; that there was a strike there and defendant came over to settle it; that defendant went out of the shop at about a quarter to twelve and the whole shop went out with him to Thompson's restaurant. Bennie Jacter testified to the same effect as Friedlander, and Fred Tobias gave similar testimony. Samuel Goldfleis testified that he saw the defendant on Market street, between VanBuren and Jackson streets, about twenty minutes after twelve.

While Tomczyk was in the hospital the defendant was taken there with three policemen and came to the foot of the bed where Tomczyk was lying. What occurred at that

time was admitted in evidence over the objection of the defendant. Charles F. Wenzel, one of the policemen, testified that Tomczyk looked at the defendant, and being asked how he was feeling he replied that he was feeling good, and said, "There you have the man that cut me," and said, "Look and see if he has not got a black eye; I hit him in the eye;" that the witness saw his eye was bruised on one side and was swelled a little bit; that he turned the defendant around, and Tomczyk said, "You have the right man;" that the defendant was going to say something, but Tomczyk raised his hand and the defendant went back; that the witness asked the defendant about his eye, which had a defect in it, and he said it was just a little sore; that the eye appeared to have a little swelling on one side and was not black but was kind of red; that when they got out in the hall he asked the defendant where he had been, and if he would tell him where he was the day before he could look him up and find out; that the defendant said he was all over and when the proper time came he would tell all about it. Charles Francis Ontank, another policeman, testified that Wenzel asked Tomczyk if that was the man that got him, or something to that effect; that Tomczyk asked if the defendant had a black eye, and if he had, that must be where he hit him. Adolph Sunberg, another policeman, testified that Tomczyk said something about an eye but the witness did not understand it. Frank Kaultier, who was a patient in the hospital, occupying the same room as Tomczyk, testified that the only thing said or done when the defendant was brought in was that Tomczyk said that was the man that did the stabbing, and said to the policeman to look at his face and see if he had a black eye, which he really did have.

As to what occurred at the hospital, the defendant testified that he stood at the foot of the bed; that he did not know the man who was lying there; that the man asked if he had a black eye and the officer said he had, and Tom-

czyk then said that was the man; that he tried to go near the bed, and the man lying in bed moved his hand, indicating that he would not hear him, and the policeman took him away; that he is cross-eyed and did not have a black eye, and that nobody ever hit him and he never had a fight.

An admission may be implied from the conduct of a party charged with crime in remaining silent when statements are made by third persons in his presence implicating him under circumstances which allow an opportunity to him to act and speak in reply and under circumstances where a man similarly situated would ordinarily deny the statement imputing guilt. (*Ackerson* v. *People*, 124 Ill. 563; *Watt* v. *People*, 126 id. 9; *People* v. *Hagenow*, 236 id. 514.) If the accused hears and understands the statement and it is concerning a fact within his own knowledge and the circumstances are such as to afford him an opportunity to act and speak freely and are such that a person would naturally make a reply, his silence may amount to an admission. The evidence is admitted not because the statement was made but because the accused has expressly ratified or adopted it as his own by not contradicting it. If the circumstances are such that the accused is not in a position to deny the statement it does not amount to an admission, or if his silence is of a character which does not justify an inference that he should have spoken, or if he is restrained in any way from speaking by fear, doubt of his rights, instruction by his attorney or a reasonable belief that his security would be best promoted by silence, it is not an admission of guilt. (*Slattery* v. *People*, 76 Ill. 217; *People* v. *Pfanschmidt*, 262 id. 411.) There was both a difference in the testimony as to what Tomczyk said and whether he identified the defendant because of the redness of his eye or regardless of that condition, and the attempt of the defendant to approach Tomczyk or to say something had a tendency to show a dissent from the statement. The evidence, when offered, was admissible, but un-

der the evidence and the circumstances proved it should not be regarded as an admission, and if that were the only evidence of defendant's guilt the court would not regard it as sufficient. Baum and Minnie Pett, however, identified the defendant as one of the crowd in the factory, and if their testimony was credited the defendant was guilty. The conclusion of fact rested purely on the credibility of the witnesses, and the court would not be warranted in reversing the finding of the jury and the trial court.

The court gave three instructions of the character frequently given on the subject of reasonable doubt, so as to restrain the jury in their deliberations from going beyond the evidence to hunt up doubts or entertaining merely chimerical or conjectural doubts or resorting to trivial and fanciful suppositions and remote conjectures as to possible states of fact different from the evidence. They emphasized the probable danger that the jury might regard something as a reasonable doubt which was not reasonable, and the giving of such instructions has been repeatedly disapproved, although the court has not reversed any judgment solely on that account. (*People* v. *Cotton*, 250 Ill. 338; *People* v. *Harrison*, 261 id. 517; *People* v. *Wallace*, 279 id. 139; *People* v. *Moses*, 288 id. 281; *People* v. *Miller*, 292 id. 318.) One of these instructions is subject to a serious objection, but as another given at the instance of the defendant is subject to the same objection, the only exception taken is that the two were contradictory. The instruction given at the instance of the People concludes with this statement: "The reasonable doubt which the jury has been permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole evidence and not as to any particular fact in the case not material to the issue in the case." The instruction given at the request of the defendant was on the presumption of innocence, which the jury were told was to be held in view in the consideration of every material fact connected

with the case. In a criminal prosecution the material facts are the final essential elements of the crime. They are the ultimate conclusions of fact from every variety of evidence tending to establish them. Although in a criminal prosecution the jury are judges of the law as well as fact, instructions should not submit to them propositions of law which it is the duty of the court to decide. These instructions submitted to the jury what were the material facts, but they were not contradictory unless in the sense that on the one hand the jury might regard an essential fact as not material, or on the other might regard merely evidentiary facts as material facts constituting the crime. The judgment cannot be reversed on account of a fault common to instructions on both sides.

In the argument the State's attorney asked what object Tomczyk, lying there in the hospital on what proved to be his death-bed, could have to unjustly and erroneously accuse the defendant. This was objected to and the law was correctly stated to the court by counsel for the defendant, the only ground for admitting the evidence being to enable the jury to determine whether there was an implied admission by the defendant. The objection was overruled, but later the court sustained the objection and directed the State's attorney to desist from that line of argument, and afterward instructed the jury that the statement made by Tomczyk was not to be considered by the jury as evidence of identification; that it was only competent for the purpose of considering the conduct of the defendant as to whether he was called upon to deny the statement, and that the jury should take into consideration all the circumstances as to whether such denial was called for. The statement was undoubtedly made only because the State's attorney was ill-advised as to the law, but it would be inevitable that the jury would regard the statement of Tomczyk as an identification except for the caution given by the court in the admission of the evidence and by the in-

struction. The court finally sustained the objection to the argument and gave the instruction to the jury, and the occurrence does not appear to be sufficient ground for reversing the judgment.

The judgment is affirmed.      *Judgment affirmed.*

---

(No. 13577.—Reversed and remanded.)
J. W. WOOD, Appellee, *vs.* BESSIE PITMAN CORBIN, Appellant.

*Opinion filed December 21, 1920—Rehearing denied Feb. 4, 1921.*