LORENZO S. RUGGLES v. EDWIN G. COFFIN.

Kennebec. . Opinion January 17, 1880.

*Practice. Instructions. Exceptions.*

A presiding justice has the discretionary power to reopen a case and permit a party to introduce further testimony after the defendant's counsel has commenced his argument to the jury, though the matter to which it relates occurred during the argument.

To be available in a bill of exceptions, special objections to the admissibility of testimony must be made when it is offered.

In a trial involving the title to a horse, the plaintiff set up title under a bill of sale absolute in its terms, which the defendant claimed was intended for security only. The scrivener, called by the plaintiff, gave testimony tending to show that the purchase was absolute; when the defendant's final argument was closed, the court permitted the defendant to be recalled and testify to certain declarations of the scrivener made to him after the testi-

mony on both sides was closed, which were to some extent inconsistent with the scrivener's testimony. The court instructed the jury in relation to the testimony of the scrivener and the defendant that, it was "all for their consideration and so far as it tended to corroborate one or the other, it was material to the issue;" *Held,* that the plaintiff had no ground for exceptions.

The statute does not prohibit the presiding justice from calling the attention of the jury to the questions of fact upon which they are to pass, and to the testimony that relates to them.

ON EXCEPTIONS.

REPLEVIN for a horse.

The presiding justice instructed the jury, *inter alia,* as follows :

"Now you see that the plaintiff and Wheeler who are the witnesses to this material part of the case, are directly at issue in regard to the fact. There is another witness who was present and a party acting in that transaction, and you have his evidence, and he is Mr. Mitchell the attorney, who drew the bill of sale. I don't remember that he was asked by either side whether he saw any money delivered by the plaintiff to Wheeler, you will remember whether he has testified that the $50 was paid, bearing in mind that he is the witness to the bill of sale. This is a piece of evidence that you have a right to consider in connection with this part of the case. You have on the one side the evidence of the plaintiff, absolute and positive, and corroborated by the written bill of sale, absolute in terms. On the other hand you have the positive evidence of Wheeler, and it is said that there are several facts and circumstances which strongly corroborate him, and one of them is the evidence of Mr. Mitchell, the absence of evidence from him of the delivery of any money from the plaintiff to the defendant. You have heard Mr. Mitchell's evidence, and you have heard the evidence of the defendant of what occurred during the argument. It is all for your consideration, and so far as it tends to corroborate one or the other, it is material to the issue here. Then another fact relied upon to corroborate Mr. Wheeler in regard to his version of the real nature of that transaction is the value of the horse. Wheeler tells you he was worth $115, $120, or $125. You have heard his statement at that time. The defendant tells you that in June, when he bought

him, he was worth $115 which he paid for him. You have no definite and particular description of the horse, so you can judge the value any further than of his age. He is said to have been seven years old, and warranted sound, the plaintiff tells you. If you are satisfied that the horse was worth $115 or $100, it is a fact that you have a right to consider as tending to corroborate the one side or the other, whether you would expect an absolute sale of a horse of that value, with no right of redemption for $50. Then another fact that is relied upon as corroborating the defendant's proposition, is that the horse was permitted to remain in the possession of Wheeler.

"The plaintiff did not take him into his possession, and it is said that this is inconsistent with the idea of an absolute purchase in the ordinary course of business; but then another fact that the parties went to a lawyer to have a formal bill of sale. It is said by counsel that that is not consistent with the ordinary course of business among men who are merely buying and selling a horse. These facts, so far as they have been developed in the evidence, are proper matters for consideration in weighing the evidence of these two witnesses, and in coming to a conclusion as to the real nature of that transaction."

The remaining facts sufficiently appear in the opinion.

*Pillsbury & Potter*, for the plaintiff, cited *Brackett* v. *Weeks*, 43 Maine, 291. *Winslow* v. *Bailey*, 16 Maine, 319.

*Foster & Stewart*, for the defendant.

BARROWS, J. One Wheeler owned the horse which was here replevied, executed a bill of sale of him to the plaintiff in which the consideration is stated to be $50, and afterwards sold him for $115 to defendant who claims that the plaintiff's bill of sale, though absolute in its terms, was really intended by the parties to it as a mortgage, and so, not being recorded, is not valid as against a bona fide purchaser without notice. Whether, as against plaintiff's claim that his purchase was an absolute one, parol evidence was admissible to show that the transaction between him and Wheeler was intended to be a mortgage, and thereby affect the written contract, was a question which perhaps might have been but was not raised in the case.

In *Shaw* v. *Wilshire*, 65 Maine, 485, the only written convey-
ance was a receipted bill of parcels, and the plaintiff denied that
he purchased the chattels, and testified that he took the property
and writing as security for certain notes which he held, and this
was conceded by all the parties concerned, so that no such ques-
tion could arise in that case. The plaintiff here seems to have
entered without objection into parol evidence as to the character
of the transaction between himself and Wheeler, and called the
scrivener who wrote the bill of sale to support his claim that the
purchase was an absolute one; and he gave testimony tending
that way. He seems to have been confronted with a note for $50,
also in his handwriting, said to have been given by Wheeler to
the plaintiff at the same time, but he denied any knowledge that
they were parts of the same transaction or that the bill of sale
was given to secure the note, or that he had ever said it was;
and he pointedly denied the statement of Wheeler that he asked
him at the time to make a mortgage; said Wheeler always called
them bills of sale, and he had made many of them, and that he did
not understand that he had any reason to suppose that Wheeler
supposed it was a mortgage. But after this testimony had been
given, and the case had been closed and while defendant's counsel
was arguing it to the jury, the scrivener said to the defendant that
"he had made these documents for these parties a number of
times, sometimes in the form of a bill of sale and sometimes in
the form of a mortgage," and that he "had always had his doubts
but this was given as security on that $50 note—that he was not
positive whether the note and bill of sale were made at the same
time or not," &c. Upon defendant's motion, and against plain-
tiff's objections the judge allowed the defendant to be recalled to
testify to this conversation, which was admitted only for the pur-
pose of contradicting the scrivener's testimony. This reopening
of the case and admission of testimony, and the instruction given
by the presiding judge that the testimony of the scrivener together
with that of the defendant as to what occurred during the argu-
ment, "is all for your consideration and so far as it tends to cor-
roborate one or the other it is material to the issue here," are
now the burden of the plaintiff's complaints, although the excep-

tions include the remarks of the judge upon the pregnant testimony that the horse was worth from $100 to $125, and was allowed to remain in the possession of the alleged vendor.

We see no error in the proceedings or instructions.

Our statute does not prohibit the presiding judge from calling the attention of the jury to the questions of fact upon which they are to pass, and to the testimony that related to those questions.

That he has discretionary power to reopen a case and permit a party to present further testimony after the testimony has been declared closed and the argument for the opposite party has commenced was settled in *McDonald* v. *Smith,* 14 Maine, 99. Nor is the exercise of that power subject to revision on exceptions, whether the testimony thus presented has been inadvertently omitted, or the matters to which it relates have occurred, or have been first brought to the knowledge of the party after the case was closed. The plaintiff objects now that the testimony thus received if otherwise admissible, did not tend to contradict the scrivener, but he made no such objection at the trial, nor does it appear that he made any except a general objection to the reopening of the case and the reception of any testimony whatever.

If he had special objections to any portion of the testimony (or to the whole of it as not conflicting with the testimony it was offered to impeach) he should have raised them then. Not having done so, they are not available now according to the rule laid down in *Longfellow* v. *Longfellow,* 54 Maine, 245, and numerous other cases before and since. Moreover, the scrivener's conversation with the defendant was to some extent inconsistent with the testimony he had given and therefore admissible. *State* v. *Kingsbury,* 58 Maine, 238.

*Exceptions overruled.*

Appleton, C. J., Walton, Danforth, Libbey and Symonds, JJ., concurred.