(No. 29707.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PRINCE HARRISON, Plaintiff in Error.

*Opinion filed Nov. 20, 1946—Rehearing denied January 20, 1947.*

464

Gunn, C.J., dissenting.

RALPH W. HARRIS, and ARTHUR F. MELVIN, both of Marion, and FLETCHER LEWIS, of Chicago, (WM. SCOTT STEWART, of Chicago, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and LAN HANEY, State's Attorney, of Marion, (CHARLES D. WIN-TERS, of Marion, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is a writ of error to review a judgment of the circuit court of Williamson county. Plaintiff in error, upon a trial by jury, was found guilty of the murder of Edith Vaughn. The jury fixed his punishment at fourteen years' imprisonment in the penitentiary. He was sentenced accordingly.

On March 11, 1945, plaintiff in error was engaged in operating a tavern and dance hall in Colp, Illinois. The events leading up to the fatal shooting originated in an argument in plaintiff in error's tavern, between Jessie Copening and Edith Kirby, over the playing of a juke box. Shortly after this argument Jessie Copening and Edith Kirby met again in a tavern located across the street which was operated by LeRoy Smith. At that time the argument was renewed and resulted in a fight between the two girls. Someone separated them. LeRoy Smith, the operator of the tavern in which the fight occurred, ordered Jessie Copening out of the tavern. Shortly thereafter she re-

entered the Smith tavern. Edith Kirby left the Smith tavern and returned to the tavern operated by plaintiff in error where she had some conversation with him. She there procured a pistol and made some threats against the Copening girl. The pistol was taken from her by plaintiff in error, who told her to forget it. Shortly thereafter plaintiff in error entered the Smith tavern. Jessie Copening and several other people were in the tavern at that time. He was armed with a pistol from which he fired two or three shots in the direction of those congregated in the tavern, evidently intending to shoot Jessie Copening. All of the shots missed Jessie Copening but one struck Edith Vaughn, a bystander. The bullet entered the side of her head above the ear. It lodged between the inner and outer plates of the skull. She was taken to a hospital where the bullet was later removed, by Doctors Lewis and Gardiner. After she had been in the hospital for some time, she apparently recovered from this injury.

Thereafter plaintiff in error was indicted by the grand jury of Williamson county for an assault with a deadly weapon, with intent to murder Edith Vaughn, alleged to have been committed on March 11, 1945. He was thereafter tried on said indictment. The jury found him not guilty and judgment was entered on the verdict discharging the defendant. The trial on the assault to murder charge was held on November 9, 1945. Edith Vaughn died on November 10, 1945. Thereafter the indictment in this case was returned, charging plaintiff in error with the murder of Edith Vaughn by shooting on March 11, 1945. Upon the trial on this indictment, the jury found the defendant guilty of murder and fixed his punishment at imprisonment in the penitentiary, as above noted. After overruling motions for a new trial and in arrest of judgment, the court entered judgment on the verdict.

When the murder case was called for trial, plaintiff in error filed a petition for discharge, setting up his former

acquittal of the crime of assault with intent to murder Edith Vaughn in bar of the prosecution for murder. This was denied by the trial court. Thereafter he sought to offer in evidence the record of his prior acquittal, which the court refused to admit.

The alleged errors urged here for reversal of the judgment are: (1) that the *corpus delicti* was not proved; (2) that the instructions given on behalf of the People were inapplicable, misleading and inaccurate; and (3) that the court erred in excluding the defense of former jeopardy. We will first direct our attention to the contention of plaintiff in error that his acquittal of the offense of assault with intent to murder Edith Vaughn constituted former jeopardy and is a bar to this prosecution for murder. If the contention of plaintiff in error on this point be sustained, the other alleged errors are immaterial. This contention raises an interesting question and one which is rarely involved.

The defense of former acquittal or former conviction is a substantial defense which is as old as the law itself. It is elementary that the acquittal of a defendant on an indictment for an offense which includes lesser offenses, operates also as an acquittal, and as a bar to any subsequent prosecution, of all included lesser offenses of which he might have been convicted on the indictment charging the higher offense. But, that is not the question involved in this case. Here the offense of which the defendant was acquitted was a lesser offense which was included in the charge in the indictment for murder upon which he was convicted. The crime of murder, however, was not an offense of which he might have been convicted on the indictment charging an assault with intent to commit murder:

In support of his contention that his former acquittal of the crime of assault with intent to murder is a bar to the prosecution against him for murder, growing out of the same transaction, plaintiff in error relies upon *People*

v. *Dugas,* 310 Ill. 291, and *People* v. *Allen,* 368 Ill. 368. In the *Dugas case* it was sought to invoke an acquittal of the crime of murder in aid of a motion for a new trial in a case where the defendant had been previously found guilty of assault to murder. The acquittal of the murder charge occurred while a motion for a new trial was pending in the assault to murder case. It was held that the acquittal of the crime of murder operated also as an acquittal of all included lesser offenses of which the defendant might have been convicted on the murder indictment, including the crime of assault to murder, growing out of the same transaction. The rule there applied was not only accurate, but elementary. In that case the situation was reversed from what it is in the present case. There the acquittal of the charge of murder which necessarily included the lesser offense of assault to murder, was invoked as a bar to the further prosecution of an indictment for such included lesser offense. Here it is sought to invoke the acquittal of a lesser offense before the offense of murder had been completed and while the victim was still alive, as a bar to a prosecution for murder. In the *Dugas case* the court observed that had the defendant been first convicted of assault to murder, such conviction would have been no bar to his subsequent prosecution for the crime of murder. This statement, instead of supporting the contention of plaintiff in error, is directly contrary to such contention.

The case of *People* v. *Allen* is also clearly distinguishable from this case. There the defendant was charged by separate indictments with manslaughter. One of the indictments charged the killing of one person and the other indictment the killing of a different person. It was conceded that both deaths grew out of the same transaction involving an automobile accident. On the first indictment the defendant was discharged under section 18 of division XIII of the Criminal Code. (Ill. Rev. Stat. 1945,

chap. 38, par. 748.) This, of course, was equivalent to an acquittal. He could not thereafter be prosecuted for the same offense. When he was brought to trial on the second indictment he invoked his discharge from prosecution under the first indictment as a bar to his prosecution under the second. The question presented was whether a person who by the same act had committed separate and distinct crimes against different persons, could be prosecuted separately for each offense and whether his discharge under an indictment for killing A was a bar to a subsequent prosecution for killing B, where both deaths resulted from the same transaction or act. After an exhaustive review and analysis of many cases, the court concluded that "When a former acquittal or conviction is pleaded in bar of a subsequent prosecution, the test is whether the facts charged in the latter indictment would, if found to be true, have justified a conviction under the earlier indictment. If they do, then the judgment on the earlier indictment is a complete bar to a prosecution under the later indictment, otherwise not." (Citing *People* v. *Bain,* 358 Ill. 177; *People* v. *Greenspawn,* 346 Ill. 484; *People* v. *Mendelson,* 264 Ill. 453; *Campbell* v. *People,* 109 Ill. 565; *Durham* v. *People,* 4 Scam. 172, and Wharton on Crim. Law, 6th ed., sec. 565.) This conclusion of the court when applied to the facts in this case is likewise against the contention of plaintiff in error.

The rule is firmly established that in order for a former conviction or acquittal to be a bar to a subsequent prosecution, the two offenses must be the same both in law and in fact. Had plaintiff in error been first acquitted on the indictment for murder, obviously such acquittal would constitute a bar to his subsequent prosecution for the crime of assault with intent to murder, because the latter is a lesser offense which is included in the crime of murder. In the early case of *Freeland* v. *People,* 16 Ill. 380, the defendant was prosecuted for the crime of riot.

He pleaded in bar of the action that he had been formerly charged, tried and convicted of an assault and battery; that the two offenses grew out of the same acts and that his former conviction constituted a bar to the subsequent prosecution. The court there observed that in order for a prior conviction or acquittal to constitute a bar to a subsequent prosecution, "the party must have been in peril of being convicted upon the first prosecution of the same *offense* described in the last." (Citing 1 Chitty's Crim. Law, 452.) The court further said, "That if the former charge was such an one that the defendant could not have been convicted of the latter charge upon it, the former acquittal or conviction cannot be plead in bar of the latter." It was further said that to constitute a bar the offense charged must agree in law and in fact with some offense of which the defendant might have been convicted upon the former prosecution. It is not enough that the act is the same, for by the same act a person may commit several offenses in law.

In 1 Bishop's New Crim. Law, sec. 1059, p. 634, the rule is stated as follows: "If within a year and a day after a battery the injured person dies, the offense becomes a felonious homicide. Then, though there should have been an intermediate conviction for assault and battery there may be a prosecution for the homicide; not, it appears, because the battery is the less offense, but because the blow which had not produced death is, when viewed in the light of its results, a thing different from the blow which produced death." In a Scotch case (*Stewart's Case,* 5 Irvine, 310,) it was said: "There never can be the crime of murder until the party assaulted dies; the crime has no existence in fact or law till the death of the party assaulted. Therefore it cannot be said that one is tried for the same crime when he is tried for assault during the life, and tried for the murder after the death, of the injured party. That new element of the injured person's

death is not merely a supervening aggravation, but it creates a new crime."

In 15 Am. Jur. sec. 391, p. 66, it is said that when, after the first prosecution, a new fact supervenes for which the defendant is responsible, which changes the character of the offense and, together with the facts existing at the time, constitutes a new and distinct crime, an acquittal or conviction of the first offense is not a bar to an indictment for the other distinct crime; that this principle is the foundation for the universal rule that at common law a conviction for assault while the person assaulted is still living is no bar to a prosecution for murder or manslaughter instituted after death has resulted to the person assaulted on account of the injuries received, and that the trial for murder does not place the defendant twice in jeopardy. The same rule was announced in 26 Am. Jur., sec. 182, p. 278, where it is further said, "The evidence in support of the indictment for murder could not have secured a conviction of that crime on the first indictment, charging only assault on a person then living."

In *People* v. *Detroit B. I. & W. Ferry Co.* 187 Mich. 177, 153 N.W. 799, it was said that a former judgment in a criminal case will not constitute *res judicata* in a subsequent prosecution as to a fact or condition which may have changed during the interval between the judgment and the second prosecution.

In *Commonwealth* v. *Ramunno,* 219 Pa. 204, 68 Atl. 184, 14 L.R.A. (ns) 209, the Supreme Court of Pennsylvania had before it a similar question. There the defendants were indicted, tried and convicted for assault while the victim was still alive. Thereafter the victim died. The defendants were then indicted for murder resulting from the same assault for which they had been previously convicted. The prior conviction was invoked as a defense to the murder indictment. The court in passing on the question observed that although the defendants had in-

tended to kill the victim their murderous intention at the time of the trial of the assault charge had not been effected and it would not have been if the victim had survived the assault; that at the time of the former trial the defendants had committed the crime of assault for which the law invoked punishment, and when it was inflicted the only crime for which they could then be punished was the felonious assault; that they had not at that time committed murder, for the reason that the victim had not died. The law could not then have said that he would die and the trial of the offense then committed was not to be indefinitely postponed in view of a mere contingency that what they had done might be followed, as a direct and intentional result of their act, by the other and distinct crime of murder. It was pointed out that when the defendants were tried in 1906, they were tried for the only offense which they had committed up to that time; that when they were tried in 1907, it was for an offense of which they were guiltless at the time of the previous trial for the reason that murder is committed only when the victim of the assault dies. It was said that authorities, not only uniform but without number, sustained the view that the defendants had never before been in jeopardy or punished for the crime of murder; and that the plea of former acquittal or former conviction must be upon a prosecution for the identical act and crime. The rule was then stated as follows: "Courts in England and in this country have, without exception, announced the principle that, unless the first indictment was such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first can be no bar to the second. When the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea of *autrefois acquit* is generally good, but not otherwise. (Citation) The evidence in support of the indictment for murder could

not have secured a conviction of that crime on the first indictment, charging only assault upon a person then living." (Citing Stephen, Crim. Law. 173; Wharton Crim. Pl. and Pr. 8th ed. sec. 476; 1 Bishop, Crim. Law, sec. 1059; 12 Cyc. Law and Proc., p. 284; 17 Am. Eng Enc. Law, p. 600.) It may be equally said here that the proof admissible under the indictment for murder could not have secured a conviction for murder under the first indictment which charged only an assault upon a person then living, for the adequate reason that he was not charged in the first indictment with the crime of murder. Moreover, he was not guilty of murder at the time of the first trial for the reason that the victim was still living.

In *State* v. *Littlefield*, 70 Me. 472, 35 Am. Rep. 335, it was said: "At the time of the first prosecution and conviction the defendant had not committed the crime with which he is now charged. True, the force had been inflicted upon the body of Morton, but his death had not ensued. The force was acting to produce its effect, and the defendant was as much responsible for its natural and necessary result as if he had all the while been pressing it upon the body of his victim. When death was caused by that force a new and distinct crime was consummated by the defendant, of which he was not before guilty, and for which he could not have been convicted at the time of the first prosecution. The offenses are not the same in fact, and therefore are not identical."

Here, at the time the defendant was acquitted of assault to murder he was charged with no other offense. He had committed no other offense. True, the fatal shot was fired by him on March 11, 1945, but it had not resulted in the death of the victim. It could not, at the time of the first trial, be determined whether it would result in death. Whether he could be charged with murder could not then be determined. If the victim died as a result of the injury within a year and a day after such injury was inflicted,

the defendant could then, for the first time, be charged with murder. No such charge could be made against him as long as the victim was still alive. He could not, therefore, at the first trial have been charged, acquitted or convicted of murder. He was not, on the first trial "in peril of being convicted" of the charge of murder contained in the second indictment. The charge in the first indictment was not such a charge that he could on the first trial have been either convicted or acquitted of the charge of murder contained in the second indictment. He could not be tried or either acquitted or convicted of murder until the new element of the victim's death supervened to consummate and make complete the crime charged in the second indictment. Plaintiff in error has not, by the former trial and acquittal, been in jeopardy or acquitted of the crime of murder. Nor was he on the first trial liable to be, or in peril of being, convicted of that offense. The authorities are so conclusive and the rule is so clear that the contention of plaintiff in error on this branch of the case cannot be sustained.

The next contention of plaintiff in error is that the *corpus delicti* was not proved. The *corpus delicti* in murder cases consists of the fact of death and the criminal agency by which the death was caused. (*People* v. *Hotz,* 261 Ill. 239.) The question raised on this point is not as to the criminal agency, but it is argued that there is no evidence that the death was caused by the shot fired by plaintiff in error. Upon the cause of death the record contains only the testimony of Dr. Gardiner. He examined and treated Edith Vaughn shortly after she received the injury. He also conducted a post-mortem examination after her death. He testified that after the death of the victim he, assisted by Dr. Murrah and in the presence of the undertaker, split the scalp and exposed the brain; that under the place where the bullet had ploughed through the skull, there was some granulated tissue and the rest of the

brain was flushed; that right under this granulated tissue there was an abscess in which there was pus; that pus is composed of bacteria and broken-down tissue. He expressed the opinion that infection caused the conditions found and that the injury was the procuring cause; that in his judgment the injury inflicted by this bullet and the resultant infection there was such as would reasonably cause death under all the conditions which he found.

There was no testimony tending to contradict or dispute Dr. Gardiner. Just what clearer proof of the cause of death could be adduced is not suggested. There is no merit in the contention that the cause of death was not amply established by this testimony. That plaintiff in error fired the shot which caused the wound to which the doctor referred is not in controversy. The *corpus delicti* was proved within all the requirements of the law, by the uncontradicted testimony of this witness.

This brings us to the questions raised concerning the instructions. The first instruction objected to is No. 24. This was the first instruction given on behalf of the People. It was a short instruction giving the statutory definition of express malice. The argument is that there was no testimony tending to show express malice. The case of *Hayner* v. *People,* 213 Ill. 142, relied upon by plaintiff in error in support of his criticism of this instruction is not in point. That case does announce the general rule that instructions not based upon the evidence should not be given. That rule, however, has no application to this case. The acts of plaintiff in error in leaving his own tavern after the fight between the two girls had been reported to him by one of the participants, and in entering the tavern in which the fight occurred and where Jessie Copening was, at that time, armed with a pistol, was sufficient to warrant the jury in concluding that such acts on his part constituted a manifestation of express malice, as defined in this instruction.

The next instruction objected to is No. 25. This was the second instruction given on behalf of the People. The instruction was in the language of the statute. It was abstract in form. It told the jury that "The unlawful killing may be perpetrated by shooting or by any other of the various forms or means by which human nature may be overcome, and death thereby occasioned." This language is usually incorporated in an instruction defining the crime of murder and as a part of such definition. Here, however, it/was given as a separate instruction and no instruction defining the crime of murder preceded it in the order in which the instructions were given. If this were a case in which there was a conflict in the evidence as to the cause of death, the instruction might be confusing and lead the jury to believe that the cause of death was immaterial. But here there is no controversy in the evidence as to the cause of death. The testimony of Dr. Gardiner on this point has already been referred to. It is true there was a feeble and unsuccessful effort in the questions propounded to Dr. Gardiner on cross-examination to raise the question of whether the victim died of natural causes. No testimony, however, was elicited by such cross-examination to support the assumption contained in the questions. There being no controversy in the evidence as to the cause of death, this instruction could not have misled the jury. The objection, upon the record in this case, is without merit.

Instruction No. 26 is said to have improperly left to the jury the determination of what were the material allegations in the indictment. The instruction in substance told the jury that while the law required the prosecution to prove every material allegation in the indictment beyond a reasonable doubt, it did not require proof of every fact in issue beyond a reasonable doubt, and that if the jury believed, from the whole evidence, beyond a reasonable doubt that the defendant was guilty, they should so find by

their verdict. In *People* v. *Scarbak*, 245 Ill. 435, the same objection was made to an instruction containing a similar reference to the material issues in the case. It was there said: "The objection to the second instruction is to the last clause of the last sentence thereof, the contention of plaintiffs in error being, that in the absence of any instruction by the court as to what was or was not material to the issue in the case it was error to give this instruction. The purpose of this instruction was to inform the jury that if, from the whole evidence, they had no reasonable doubt of guilt they should convict, even though they might entertain such doubt as to some particular fact. Such an instruction has often been approved by this court."

Instructions Nos. 27, 28 and 32 defined the term "malice." It is difficult to determine just what plaintiff in error's objections are to these instructions. The instructions contained correct definitions of the term "malice" and they were particularly applicable to the facts in the case. These instructions were proper under the authority of *Dunaway* v. *People*, 110 Ill. 333, where it was said: "The law is, that had defendant shot at Hartwell with intent to murder him, but killed Hendrickson, the killing of the latter would have been murder at common law. The rule in such cases rests on the fact there was the felonious intent to commit murder. It is said when an unlawful act in itself is done with deliberation, and with the intention of killing or inflicting serious bodily harm, though the intention be not directed to any particular person, and death ensue, it will be murder at common law. Thus, if a party fires a gunshot into a crowd of persons, with intent to murder some one, or when it is done with criminal recklessness, the killing will be murder, although no intention existed to kill any particular person."

Instruction No. 29 is objected to. This instruction told the jury in substance that a person is presumed to intend the natural consequences of his act and if the jury believes

that the defendant made a malicious and felonious assault upon Jessie Copening, not in self-defense, and fired a shot in the direction of the deceased, which struck her, inflicting a mortal wound of which she died, "these facts sufficiently show the intention of the defendant, Prince Harrison, to kill and murder Edith Vaughn, although the defendant had no actual malice or ill will toward the deceased." The facts recited in this instruction and the rule stated as to the effect of the existence of those facts are practically identical with the facts stated and the rule announced in *Dunaway* v. *People,* 110 Ill. 333. It is objected first that this instruction precluded the possibility of manslaughter and should not have been given in the absence of an instruction defining manslaughter. No instructions on manslaughter were tendered or requested by plaintiff in error. While, under the facts in this case, the jury might have been warranted in finding the defendant guilty of manslaughter instead of murder, and, had such instructions been tendered, it would have been error to have refused them, we have repeatedly held that it is the duty of the court to pass on and give or refuse such instructions as are asked by the parties, and that a defendant cannot complain of the failure of the court to give instructions on manslaughter where no such instructions have been tendered.

In *People* v. *Savant,* 301 Ill. 225, we said, quoting from *People* v. *Lucas,* 244 Ill. 603: "No such instructions having been asked by plaintiff in error, the court had a right to assume that plaintiff in error preferred to submit the case to the jury in such way that the jury would be compelled to find the defendants guilty of murder or not guilty. It was the right of plaintiff in error to submit that question to the jury and require the jury to pass on the question of his guilt or innocence of the crime of murder, and it was not the duty of the court to submit issues and questions to the jury which the parties by their action said

they did not desire passed upon." The same rule was announced in *Dunn* v. *People*, 109 Ill. 635. This objection to instruction No. 29 cannot be sustained. The instruction is further criticised because it is said that it required the jury to find that the assault was not made in self-defense, and that no instruction defining self-defense was given. While it is true that no instruction was given defining self-defense, this language in the instruction could not possibly have injured the defendant in any way. It was properly used in the instruction setting out the facts necessary to establish a malicious and felonious assault with malice aforethought. This objection is chimerical and wholly without merit.

Instruction No. 31 was in the language of the statutory definition of the crime of murder. The only objection is that instructions Nos. 27, 28, 31, 32 and 34, when considered as a series in connection with No. 29, were misleading. We are unable to see the force of this objection.

Instruction No. 34 contains a definition of an assault. It is argued that there was no assault made by the defendant, "unless the firing of a pistol constitutes an assault;" that the defendant did not assault Edith Vaughn; that Jessie Copening testified that he fired at her after she was outside the building and after Edith Vaughn had been shot. This is a misapprehension of the testimony. We cannot believe that counsel for plaintiff in error are sincere in their assertion that the firing of a loaded pistol at another or at a group of person congregated in a room, in reckless disregard of consequences, does not constitute an assault.

Instruction No. 30 was a stock instruction on the subject of reasonable doubt. The basis for the objection to this instruction does not clearly appear. Similar instructions have been approved by this court in *Painter* v. *People*, 147 Ill. 444, and in other cases almost innumerable.

From an exhaustive examination of the entire record and such careful consideration of every objection urged as

the importance of the case demands, we find no reversible error in the record.

The judgment of the circuit court of Williamson county is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE GUNN, dissenting:

I cannot agree with all that is said in this opinion. Instruction 26 is clearly condemned by our recent cases. *People* v. *Berne,* 384 Ill. 334, *People* v. *Flynn,* 378 Ill. 351, *People* v. *Rongetti,* 331 Ill. 581, and other cases mentioned in the *Berne case,* point out that it is error to give an instruction which leaves to the jury the determination of the material issues in the case. The case cited to support this instruction, *People* v. *Scarbak,* 245 Ill. 435, was handed down before the numerous cases commencing with *People* v. *Seff,* 296 Ill. 120, were adopted. It must be considered as overruled. For that reason I dissent from this part of the opinion.