THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* HIPÓLITO RIVERA RAMOS, Defendant and Appellant.

No. CR-62-126. Decided June 21, 1963.

*G. Almeda Aponte* for appellant. *J. B. Fernández Badillo, Solic-itor General,* and *Héctor R. Orlandi Gómez, Assistant Solic-itor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On March 13, 1961, a complaint was filed in the Cayey Part of the District Court against Hipólito Rivera Ramos for the offense of aggravated assault and battery. It charged that on February 25, 1961, on Santiago R. Palmer Street of Cayey, he illegally, wilfully and maliciously and with the criminal intent of causing grave bodily injury upon the person of a fellow man, he violently assaulted and battered Agus-

tín Díaz Delgado with a wooden club producing two wounds on the head which were treated in the Health Center of Cayey. The aggravating circumstance consisted in that the offense was committed with the premeditated intent and designed purpose of inflicting grave bodily injury, and that he used a blunt weapon which could cause grave injury and even the death of a human being.

On March 21, 1961, the Cayey Part rendered judgment on the plea of guilty and sentenced Rivera Ramos to serve 40 days in jail for that offense. The sentence was fully served on April 7, 1961.

On April 14, 1961, the district attorney filed an information against appellant in the Guayama Part of the Superior Court for the offense of voluntary manslaughter. The information charged that on February 25, 1961, and in Cayey defendant Hipólito Rivera Ramos, on an occasion of a sudden quarrel and heat of passion, assaulted and attacked with the intent to kill, with a club, a human being, Agustín Díaz, inflicting several blows on the head which fractured the skull, as a result of which Díaz died on March 14, 1961.

In this second homicide proceeding appellant pleaded former jeopardy, since he had been sentenced to serve, and did serve, 40 days' imprisonment in jail for aggravated assault and battery upon Agustín Díaz; that Díaz died on March 14, 1961, seven days before the District Court accepted appellant's plea of guilty of aggravated assault and battery and sentenced him; and that the facts in both cases were the same and had arisen out of the same criminal transaction or wrongful act.

The trial court overruled the plea of former jeopardy and, the case having been heard on the merits by the court without a jury, appellant was convicted of manslaughter and sentenced to serve from one to five years' imprisonment in the penitentiary. Appellant does not challenge before this Court

the conviction in itself. The only error assigned is that the trial court overruled the defense of former jeopardy.

At the trial the district attorney and the defense stipulated that both cases involved the same facts, although in the second there was the additional fact of the aggrieved party's death. They further stipulated that appellant was sentenced in the case for aggravated assault and battery seven days after the injured party died.

It appears from the record that the aggressor and the victim were taken before the district judge several days after the occurrence for the investigation of the case, and a complaint for aggravated assault and battery was filed against defendant. He remained in jail until he was taken to court for trial. At the hearing of this case defendant testified:

"District Attorney: -

Q. And when you went to court and pleaded guilty, did you know already that the man was dead?

A. I did not know it then nor had heard it, nor anything; then they went to the municipal jail and I was summoned to appear and when I was summoned I had to go, I could not fail to appear in court; then when I went to court, the judge said to me: 'Hipólito, you have two cases,' he said, 'here.' I said . . . please notice that I am telling you the truth . . .

Q. Yes, man, go ahead.

A. 'You have a simple assault and battery and two years have elapsed since that; two years since that and the reason why two years have elapsed since that case is that you were undergoing treatment . . .'

Q. Treatment for what?

A. By a doctor.

Q. But what kind of treatment?

A. By a doctor of the Insular Penitentiary of Río Piedras.

Q. But don't you know whether it was for the bladder or for the mind?

A. For the mind.

Q. For the mind?

A. Then I was discharged because I made good; I made good because in a case which I had, which was the case in which I was sentenced, I worked in the projects, in the carpentry shop.

Q. And when did you learn that the man had died?

A. When I went to court I thought he was still living.

Q. And when did you learn it?

A. Then, when I went to court in that case, he said: 'You, Hipólito Rivera Ramos, have a case of a blow which you inflicted upon someone. Are you guilty or innocent?—Your, Honor, I am going to plead guilty in that case. Do you know that the man died?'

Q. The judge said that?

A. The judge said: 'Do you know that the man died?—Yes, sir; he died, I was told, I did not know it.' Then he said to me: 'But he did not die as a result of that.'

Q. Who said?

A. The judge said to me: 'Do you know that the man died?' And I said to him: 'I did not know it; now I know it.' But he did not die as a result of that. Are you going to plead guilty?

Q. The judge told you that he did not die as a result of that, of the blow which you had inflicted?

A. Yes. He said to me: 'Are you going to plead guilty? —Yes, I am going to plead guilty. In that case I am going to sentence you to serve 40 days in jail.'

Q. The judge said to me: 'As a result of a blow which you inflicted upon someone, you have a case here of aggravated assault and battery. Are you guilty or are you going to plead guilty or innocent?—No, I am going to plead guilty; you know that when I know that I have committed an offense, I plead guilty.' And he said to me: 'Do you know that the man died?—No.' I was surprised, and he said to me: 'But he did not die as a result of that. Are you going to plead guilty in that case?—Yes. You have 40 days in jail.' "

For the purposes of the issue posed, it is well to set forth the manner in which death the object of the homicide prosecution occurred, as it appears from the record, which is quite brief:

Dr. Bolívar Patiño Arca, testifying for The People, said that the victim was confined in the District Hospital of Fajardo on *March 7*, 1961, for aggravation of a respiratory condition following a cranioencephalitic trauma sustained some time before. He underwent emergency tracheotomy in order to relieve that condition. He died seven days later, March 14. The skull presented evidence of a lineal fracture of the left temporal bone produced about one month before. That type of fracture is caused by *one single blow* and there was no other fracture in the skull. It was the only severe trauma which he found, and the fracture must have been caused by a blunt instrument. It could not be a sharp instrument. The physician concluded that there had been trauma of the skull with intercerebral hemorrhage and complication of bilateral bronchopneumonia with abscesses, all of which could bear relation to the facts of February 25.

The next and only prosecution witness of the facts testified that the defendant and the victim had been drinking in the latter's business; they engaged in an argument over one dollar; the victim "got hold of a club" which he had inside the counter and the boy "jumped" and took it away from him and started to strike him; he struck two blows. The victim fell at the first blow and the witness "dashed out" to fetch the police. He struck him on the head, on the left side, and when he left "they were inside engaged in a strife." He said that at that moment he did not see a hatchet there. The victim had only one arm. The victim "got hold" of the club in order to strike the defendant, but the latter took it away from him.

That was the prosecution evidence. The district attorney waived the testimony of policeman Félix Cartagena who was

called to the witness stand by the defense. A fight was reported to him, and when he arrived at the place the injured was lying on the ground trying to get up. He believed that he was unconscious. Defendant was in front holding the club and told him that the victim was going to strike him with a hatchet and he struck him with the club. The policeman found the victim with a hatchet in his hand. He seized the hatchet and the club which were admitted in evidence. On the day of the investigation both, the victim and the defendant, appeared before the judge. The injured answered correctly to the judge.

Defendant testified that both of them had been drinking in the injured's business from 11 a.m. to 2 p.m., upon the invitation of the latter who did not like to drink with society people but with "the most *atómicos*"; they engaged in an argument over a drink and the victim swung the hatchet several times but missed, and it fell to the floor; thereupon he got hold of the club which he had inside in order to strike the witness, but the latter took it away from him and struck him with it.

The district judge stated that he investigated the case in the presence of defendant as well as of the injured party; that he determined probable cause of assault and battery on the basis of the testimony of both; the aggrieved party presented only a bandage on the head and looked all right, spoke correctly, expressed himself with clarity and walked normally. He ordered defendant's commitment to the municipal jail, and subsequently the latter pleaded guilty at the trial and was sentenced. The judge stated that he did not know at that time that the injured party was dead.[1]

---

[1] *People* v. *Nieves*, 63 P.R.R. 512 (1944), presented a situation of facts very similar to that in this case. The trial court ordered the dismissal of an information of murder on the ground of former conviction of aggravated assault and battery upon a complaint filed four days after the death

■ The Bill of Rights of the Constitution of the Commonwealth provides in § 11: "No person shall be twice put in jeopardy of punishment for the same offense."

Section 6 of the Code of Criminal Procedure more explicitly provides that no person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted. According to § 162 of the same Code, a plea of once in jeopardy for the same offense and a former judgment of conviction or acquittal of the same offense may be entered against the information; and according to § 169, if the defendant has been convicted or acquitted upon an information or has been once placed in jeopardy upon the same information, such conviction, acquittal or jeopardy shall be a bar to another information for the offense charged in the former or for an attempt to commit the same, or for an offense necessarily included therein of which he could have been convicted under that former information.

■ Indeed, no one will question that aggravated assault and battery and manslaughter are not in law the same offense for the purposes of the foregoing constitutional and statutory provisions. However, the problem before us does not narrow down to a determination whether defendant was convicted of the same or distinct offenses, nor is it a case of imposition of different punishments because the facts constitute at the same time distinct positive offenses.

■ In his memorandum the Solicitor General grants us the benefit of a clear and correct fundamental exposition of the problem involved here which we ought to reproduce:

"In every murder or manslaughter in which death is caused by blows or wounds, the commission of the crime is initiated by

---

of the victim of the battery, caused with a stone. In that case this Court merely held that the judgment of the trial judge was not appealable by the prosecution. On that occasion we made no pronouncement on the correctness or incorrectness in law of such judgment.

an *assault and battery.* Hence, *the assault and battery* in that case is an element of the higher offense, that is, the lesser offense is merged in the higher offense, *People* v. *Reyes,* 55 P.R.R. 805, 807 (1940) ; *People* v. *Gómez,* 14 P.R.R. 124 (1908); *People* v. *Dumas,* 14 P.R.R. 384, 391 (1908). Thus, on an information for the higher offense the defendant could be convicted of the lesser offense because the latter is necessarily included in the former.

"For the purposes of the plea of former jeopardy, both offenses are considered identical if one is necessarily included in the other. In other words, the well-established doctrine is that the conviction or acquittal of a minor offense which is necessarily included in a higher one is a bar to a conviction of the latter. In this connection, in 7 Cal. Jur. 959, § 100, it is stated as follows:

" 'When one offense is a necessary element in and constitutes an essential part of another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to the prosecution of the other. Wherever a statute permits a conviction of any lower offense necessarily included in a higher one with which the defendant is charged, a conviction or acquittal of such higher offense is a bar to a subsequent prosecution for any lower offense necessarily included in it. And, e converso, when one is charged with a lower offense necessarily included in a higher, an acquittal or conviction, unless procured by fraud, connivance, or collusion of the defendant, is a bar to a subsequent prosecution for such higher offense, since the higher cannot afterwards be prosecuted without opening the door for a conviction of an offense for which the defendant has before been tried and acquitted or convicted. Although elsewhere there is authority to the contrary, this rule is equally true although the court trying the lesser offense has no jurisdiction over the higher. The state is a single entity. It may choose its forum and determine for what offense it will prosecute a citizen. Having done so it cannot complain if it made an unwise selection.'

"In *People* v. *Peña,* 18 P.R.R. 870 (1912), the defendant was acquitted in the municipal court of an offense of *assault and battery.* Nevertheless, an information was filed in the district court charging him with *assault with intent to commit manslaughter.* The trial having been held, the jury returned a verdict of conviction for the offense of *assault and battery with aggravating circumstances,* and he was sentenced to serve one

year in jail. Having alleged former jeopardy for the same offense, this Court, on appeal, after referring to § *169 of the Code of Criminal Procedure*, decided the question in his favor stating as follows at p. 873:

" 'It is well settled by the consistent current of authority that when one is charged with an offense which includes another offense of lower grade, and is regularly tried and found guilty only of the lesser offense, the verdict operates as an acquittal of the offense charged, and he cannot be again tried for that offense, though a new trial is granted upon his motion and we find by a reference to our own statutes that the offense of an *assault with a deadly weapon* is necessarily included in that of an *assault with intent to commit manslaughter*, and under an indictment or information charging the greater offense to have been committed with a deadly weapon, the defendant may be found guilty of the lesser. (*People* v. *Gordon*, 99 Cal. 228.) Then, of course, the offense of *aggravated assault and battery*, of which the defendant was convicted, was properly included in the crime of *assault with intent to commit manslaughter*, with which he was charged in the information, and he could have been properly convicted of the lesser offense had he not interposed his plea in bar. Now, having been formerly acquitted in the municipal court *of the very same offense*, he should not have been convicted thereof in the district court after pleading his former jeopardy in bar.' (Italics ours.)

"The well-established doctrine in many other jurisdictions, especially in the State of California, is in the sense that a defendant who has been acquitted or convicted on the same facts of a lesser offense necessarily included in a higher offense can not be prosecuted nor convicted of the higher offense, since such action would constitute a violation of the principle sanctioned in the constitutional provision whereby a person can not be put twice in jeopardy for the same offense.

"In *People* v. *McDaniels*, 137 Cal. 192, 69 Pac. 1006 (1902), defendant pleaded guilty before a justice of the peace of an offense of battery and was sentenced to serve 175 days in jail. Subsequently he was charged with, convicted of and sentenced for an offense of *assault with a deadly weapon with intent to commit murder*. The trial court did not permit the introduction of evidence to show that defendant had been put in former jeopardy for the same offense. The Supreme Court of California

decides the point and, citing authorities, it states as follows:

" '. . . It is well settled that a conviction of a lower included offense is an acquittal of all higher offenses included in the indictment or information, and where such conviction for a lower offense is set aside, and a new trial granted, even upon the motion of defendant, or upon appeal, he cannot be convicted of any higher offense than that of which he was first found guilty. *If an acquittal can have such effect, much more strongly it should be held that a prior conviction of any included offense should bar a subsequent prosecution for a higher offense included in the* same transaction. (Italics ours.)

. . . . . . . .

" 'Of course, if the former conviction was procured by the fraud, connivance, or collusion of the defendant, this fact vitiates it, and it is no bar to a subsequent prosecution. [Citations.] . . . The constitutional provision here involved was made for the protection of the citizen, and should be liberally construed in his favor. In *State* v. *Cooper,* 13 N.J. Law 361, 25 Am. Dec. 490, it was said: "Where the state has thought proper to prosecute the offense in its mildest form, it is better that the residue of the offense go unpunished, than, by sustaining a second indictment, to sanction a practice which might be rendered an instrument of oppression to the citizen." [At 1009.]'

"The same doctrine is ratified in *People* v. *Mendoza,* 131 P.2d 622 (Cal. C.A. 1942). In this case defendant pleaded guilty in the municipal court of an offense of *battery* and was sentenced to serve 90 days in jail. Subsequently he was charged with *attempted rape* on the same facts. In passing upon the question of 'former jeopardy,' the Court said:

" 'No rule is more firmly established in our law than that which holds that a series of charges may not be preferred out of the same facts. In connection with this rule, it is said in Bishop's New Criminal Law, volume I, section 1057: "When he has been put in jeopardy for the lowest, then, for example, is prosecuted for the highest, our constitutional guaranty stands in the way of his being convicted a second time for the lowest, for a jeopardy of the highest is equally a jeopardy of the lowest. And since the government confessedly cannot begin with the highest, and then go down step by step, bringing the man into jeopardy for every dereliction included therein, neither can it

begin with the lowest and ascend to the highest with precisely the same result." [At 326.]'

"In *Application of McNeer*, 343 P.2d 304 (Cal. C.A. 1959), the Court said:

" '. . . Conviction of the lesser but included offense was held to be a bar to a prosecution for the greater on the theory that to convict of the greater would be to convict twice of the lesser. It, of course, made no difference as to which offense was first prosecuted. If the defendant was tried first for the lesser offense that prosecution barred the subsequent prosecution for the greater offense.'

"Referring to § *1023 of the Penal Code of California*, counterpart of § *169 of our Code of Criminal Procedure*, the Supreme Court of that State said in *Gómez v. Superior Ct.*, 328 P.2d 976 (1958), citing decisions:

" 'Although section 1023 refers to a situation where the prosecution for the greater offense is first in time, there is no such limitation in the cases. If the defendant is tried first for assault and later for battery, the prosecution for the included offense bars the subsequent prosecution for the greater offense. [Citations.] "A conviction of the lesser is held to be a bar to [the] prosecution for the greater on the theory that to convict of the greater would be to convict twice of the lesser. [Citation.] If this were not the rule, section 1023 could be vitiated by the simple device of beginning with a prosecution of the lesser offense and proceeding up the scale." [At 981.]'

"In *People* v. *Krupa*, 64 Cal.App.2d 592, 149 P.2d 416 (1944), the Court said:

" '. . . Where the state instead of prosecuting first for the offense which carries the heavier penalty, prosecutes for the offense which carries the lighter penalty, or accepts a plea of guilty to that offense, it is without right thereafter to prosecute for the offense which carries the heavier penalty.'

"See, in the same connection, *People* v. *Blue*, 326 P.2d 183 (C.C.A. 1958).

"This doctrine has been followed substantially in other jurisdictions. In *State* v. *Colgate*, 3 Pac. 346 (Kan. 1884), it is said in this respect:

" '. . . a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such sepa-

rate parts, although each part might of itself constitute a separate offense. If the offender be prosecuted for one part, that ends the prosecution for that offense: provided such part, of itself, constitutes an offense for which a conviction could be had. And, generally, we would think that the commission of a single wrongful act can furnish the subject-matter or the foundation of only one criminal prosecution.'

"In *State* v. *Smith*, 13 S.W. 391 (Ark. 1890), defendant was convicted of *aggravated assault and battery*. It was held that he could not *afterwards* be tried for *assault with intent to kill* in violation of the constitutional provision on *double jeopardy*.

"In *Bell* v. *State*, 30 S.E. 294 (Ga. 1898), the Supreme Court of that state adheres to the same principle:

" 'Where a person has been put in legal jeopardy of a conviction of an offense which is a necessary element in, and constitutes an essential part of, another offense, such jeopardy is a bar to a subsequent prosecution for the latter offense, if founded upon the same act.'

"In *State* v. *Wondra*, 131 N.W. 496 (Minn. 1911), defendant was convicted and sentenced in the municipal court, on the same facts, of a lesser offense included in the offense of mayhem. The court held that there was former jeopardy. Citing the case of *People* v. *Defoor*, 100 Cal. 150, 34 Pac. 642 (1893), it stated as follows:

" 'The defendant having been convicted for that offense [assault], he could not be prosecuted for mayhem committed during the same assault without violating the constitutional provision which protects him against being twice convicted of the same offense—a provision as important and to be as sacredly regarded as the right of trial by jury, or any other constitutional provision intended for the protection of the life, liberty, or property of a citizen.

" '. . . a valid conviction for assault, not fraudulently obtained, would be a bar to a subsequent prosecution for a maiming caused by that assault.'

[Citations of a great number of decisions and authorities follow.]

"As has been seen, the general rule is the result of a liberal interpretation by the courts of justice of the expression 'the

same offense.' A literal interpretation of this expression could unfortunately lead to the alteration of the real sense and purpose of the constitutional provision. Experience teaches that the consummation of a wrongful act may carry with it the execution of other related acts which, by themselves, taken isolatedly, may constitute by definition of the law different offenses. For example, the act of killing a fellow man by means of blows necessarily carries with it the act of simple or aggravated battery. Each of these acts being a distinct offense, a restrictive interpretation of the constitutional provision would permit the prosecution of defendant, step by step, from the lesser offense of assault up to the higher offense of murder. Yet, we have seen that such action would constitute a violation of the provision whereby a person can not be punished twice for the *same offense.*"

After that exposition the Solicitor General contends that those principles do not apply to the situation of facts in the case at bar because, in his opinion, such general rule or principle is not applicable "Whenever some circumstance or fact which aggravates the act committed supervenes after a proceeding is instituted against a defendant for the *lesser offense*. We believe that a person who has been tried, convicted or acquitted of the lesser offense may be prosecuted for the higher offense if, *at the time* action is brought by the State by filing the corresponding complaint for the minor offense, the aggravating fact for which he is afterwards prosecuted has not yet supervened . . . . Such person could easily escape punishment for causing the death of a fellow man by merely pleading guilty of the offense of battery in the *interval* before the victim's death." (Italics in citation by the Solicitor General.)

He further argues: "Society can not be made to depend on these contingencies. The State should not remain idle without being able to anticipate the occurrence or not of the aggravating event. As soon as a wrongful act is committed the State is under the duty to institute the proceeding to punish the person responsible by filing the proper complaint or infor-

mation. After action is brought by the State, the defendant may be tried, convicted or acquitted of the acts charged therein which by themselves constitute an offense. If the unforeseen aggravating event supervenes subsequent thereto, the State has power to prosecute defendant for this *new offense* and he may not then plead former jeopardy. In such case the offense is not the same for which he is twice put in jeopardy. A *new fact* has supervened which creates a *new offense.* As a question of reality, he was never put in jeopardy of being punished for such wrongful act." (Italics by the Solicitor General.)

 He cites from 1 Wharton, Criminal Law and Procedure 353 (12th ed.):

"If, *after a prosecution* for an offense, a *new fact* supervenes for which the defendant is responsible, and which changes the character of the offense, and, together with the previous facts, constitutes a new and distinct crime, an acquittal or conviction of the first offense is no bar to an indictment for the other distinct crime." (First italics ours.)

Also, from 1 Bishop, New Criminal Law 634, § 1059 (8th ed.), he cites:

"If within a year and a day after a battery the injured person dies, the offense becomes a felonious homicide. Then, though there should have been an *intermediate* conviction for assault and battery, there may be a prosecution for the homicide; not, it appears, because the battery is the less offense, but because the *blow which had not produced death* is, when viewed in the light of its results, a thing different from the *blow which had produced death.*" (Italics ours.)

And from Fricke, California Criminal Law 401 (6th ed.), the following:

"The conviction, acquittal or prosecution of a person is not a bar to the subsequent prosecution of such person for an offense which *did not have an existence at the time of the former trial.* Thus, where a defendant has committed an act of violence which

in its immediate results amounts to a misdemeanor but which in its after consequences upon the victim of violence becomes a felonious homicide through the death of the victim, a conviction, acquittal or trial of such person for the misdemeanor will not bar a prosecution for murder or manslaughter based upon the death of the victim *subsequent to such prior prosecution.*" (Italics ours.)

If the conviction of homicide had been the first, there is no question that appellant could not afterwards be prosecuted and convicted of aggravated assault and battery, under the circumstances of this case. See the discussion in *Commonwealth* v. *Comber*, 97 A.2d 343 (Pa.), and the *Annotation* in 37 A.L.R.2d 1068. We are faced, on the contrary, with a situation which rarely occurs in cases of unlawful killing wherein prosecution was first had for the battery which caused the death.

■ At this point, we are entirely in accord with the views of the Solicitor General, but we cannot agree on the final disposition of the case. There is one detail in those views which we have pointed out emphasizing the same in the citations which precludes us from upholding the second conviction. In this case the victim was already dead on the day appellant was convicted of aggravated assault and battery. The supervenient *new fact*, the death, did not supervene *after* conviction, nor in the interval between the two prosecutions, nor was it an additional *intermediate* fact. At the time appellant was prosecuted and sentenced for aggravated assault and battery, March 21, he had already committed seven days ago a homicide by such battery. Paraphrasing Bishop in his preceding quotation, at the time appellant was convicted of battery, such battery *was* already *the blow which had produced the death;* hence, the blow object of the homicide prosecution would not be a *distinct blow.* Nor could we say, as does Fricke, that the offense of homicide *did not have an*

*existence* at the time of the former conviction, or that this homicide prosecution on review was based upon a death which ensued *subsequent* to the first prosecution. Nor was it a case in which the State was bound not to prosecute for the offense of battery *"in the interval"* preceding the death, which by law may be as much as a year and a day in order to become murder or homicide, the death having already ensued at the time of the former conviction.

In *State* v. *Littlefield*, 70 Me. 452, 35 Am. Rep. 335, it was held that a former conviction of assault and battery is no bar to an indictment for manslaughter, where the injuries resulted in death after the former conviction, and it was said:

"At the time of the first prosecution and conviction the defendant had not committed the crime with which he is now charged. True the force had been inflicted upon the body of Morton, *but his death had not ensued.* The force was acting to produce its effect, and the defendant was as much responsible for its natural and necessary result as if he had all the while been pressing it upon the body of his victim. When death was caused by that force a new and distinct crime was *consummated* by the defendant, of which he was not *before* guilty, *and for which he could not have been convicted at the time of the first prosecution."* (Italics ours.)

*Cf. Commonwealth* v. *Roby*, 29 Mass. 496.

The same view as in *Littlefield* was held in *Johnson* v. *State*, 19 Tex. 453, 53 Am. Rep. 385. It was said:

"There never can be the crime of murder or manslaughter until the party assaulted dies; these crimes have no existence in fact or law till such death. It cannot therefore be said that one is tried *for the same crime* when he is tried for assault *during the life* and tried for murder or manslaughter *after the death* of the injured party. The death of the assaulted party creates a new crime. At the time the defendant was convicted of the assault and battery upon Davis, the court in which such conviction was had did not have jurisdiction of the offense here prosecuted, *because said offense had not then been completed, and could not then have been prosecuted* . . . . It is true that

the greater offense always includes the lesser. And it is also true that where an offense consists of different degrees, and the defendant upon indictment or information is convicted or acquitted of any grade of such offense, such conviction or acquittal is a bar to any further prosecution of the offense. [Citations.] But these rules do not apply where the higher grade of the offense *has not been completed* at the time of the conviction or acquittal of a lesser grade included within it, *because such higher grade did not then exist."* (Italics ours.)

In *Díaz* v. *United States,* 223 U.S. 442, Díaz battered a person on May 30, 1906 and the next day he was charged with assault and battery. He was convicted and paid a fine. The injured died on June 26 and Díaz was prosecuted for homicide. In overruling the plea of former jeopardy, the Court said that homicide and assault and battery, although identical in some of their elements, were distinct offenses both in law and in fact; that the death of the injured person was the principal element of the homicide, but was no part of the assault and battery; *that at the time of the trial for the latter the death had not ensued,* and not until it did ensue was the homicide committed; *then, and not before,* was it possible to put the accused in jeopardy for the latter offense. See the elaborate discussion of the problem in *People* v. *Harrison,* 395 Ill. 463, 70 N.E.2d 596; and *Commonwealth* v. *Ramunno,* 219 Pa. 204, 68 Atl. 184. *Cf. People* v. *Detroit B. I. & W. Ferry Co.,* 187 Mich. 177, 153 N.W. 799; *Curtis* v. *State,* 22 Tex. App. 227, 3 S.W. 86.

Under the circumstances of this case in which between the first and second offense charged there is no distinct element other than the death of the injured person, and death having ensued *before* conviction in the former prosecution, wherefore appellant had already consummated the offense of homicide at the time of that prosecution and conviction, the provisions of § 44 of the Penal Code are applicable:

"An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

Under the circumstances of this case, the issue of former jeopardy raised before the trial court was proper. The judgment appealed from will be reversed, another rendered directing the dismissal of this prosecution, and appellant's release is decreed.